Robert LICKISS, Plaintiff–Appellee,

v.

Mary DREXLER, formerly the Sheriff of Tazewell County, and Ralph Hodgson, Sheriff of Tazewell County, Defendants–Appellants.

No. 97–2818.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1998.

Decided April 21, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied June 30, 1998.*

Marcia F. Straub (argued), Peoria, IL, for Plaintiff–Appellee.

James G. Sotos (argued), Sally Wiggins, Hervas, Sotos & Condon, Itasca, IL, for Defendants–Appellants.

* Judge Ilana Diamond Rovner and Judge Diane P.    Wood voted to grant rehearing en banc.

Before CUMMINGS, COFFEY and MANION, Circuit·Judges.

CUMMINGS, Circuit Judge.

In his amended complaint filed in January 1996, Robert Lickiss sued Mary Drexler, former Sheriff of Tazewell County, Illinois, and her successor, Ralph Hodgson. Plaintiff alleged that he was hired by the County of Tazewell as a deputy sheriff in January 1983 and promoted to sergeant in September 1988. In July 1994 he received a complaint that Deputy Sheriff Michael Steinborn was then engaged in misconduct by "spending hours with his girlfriend or looking for her" and threatening himself and another person with a gun while off duty but in uniform. After receiving the complaint against Steinborn, plaintiff interviewed witnesses and took statements from them and reported his findings to then-Sheriff Drexler and then-Chief Deputy Hodgson. Drexler instructed Lickiss to stop investigating Steinborn. Thereafter Drexler gave Steinborn two weeks off with pay and instructed him to seek counseling.

In September 1994 plaintiff was contacted by individuals who informed him that they wished to press charges against Steinborn because they were fearful for their safety and that of their family. Consequently Lickiss reported this matter to the State's Attorney and an Assistant State's Attorney of Tazewell County.

Lickiss alleged that Sheriff Drexler ordered "a massive investigation" of Lickiss after learning that he had disclosed information about Steinborn's activities. In October 1994 she suspended Lickiss without a hearing and without pay for an indefinite period while she "falsely publicly accused him of violating federal and state laws." According to plaintiff, his suspension was in retaliation for his disclosure of the misconduct of Deputy Sheriff Steinborn. Eight days later, Drexler sent Lickiss a letter confirming his suspension and advising him of her intent to terminate him. A month thereafter she notified plaintiff that she had terminated his employment. This action was two days before defendant Hodgson became Sheriff. Lickiss' termination was allegedly in retaliation for disclosing the misconduct of Deputy Sheriff Steinborn.

On February 27, 1995, Sheriff Hodgson reinstated plaintiff as a deputy sheriff after a two-week unpaid suspension and after his demotion from sergeant to deputy sheriff. According to plaintiff, the charges against him by Drexler and Hodgson were false and made to cover up Steinborn's actions and to punish plaintiff for not participating in the cover-up. In Count I of his complaint, plaintiff alleges that his termination for investigating fellow police officer Steinborn and reporting that information to the Tazewell County State's Attorney violated his First Amendment rights. In Count II, plaintiff claims that defendants deprived him of due process of law by compensating him at a deputy's rate of pay rather than a sergeant's rate during the period of his suspension. In closing, the plaintiff asked the court to reinstate him to his former position and rank without penalty and to expunge any adverse employment records. Lickiss sought $2 million in compensatory damages and another $2 million in punitive damages.

In December 1996 defendants filed a motion for summary judgment on Count I, claiming that their "interest in maintaining discipline, loyalty, confidentiality, and respect for departmental orders, rules and regulations outweighed any right Plaintiff claims to disregard official orders in order to investigate and speak out on the matters identified in Plaintiff's complaint." In the alternative the former Sheriff and her successor asserted they were entitled to qualified immunity.

As to plaintiff's due process claim in Count II, defendants asserted that his claim was rejected by an arbitrator and that he is simply seeking review of that decision and that he was not entitled to due process prior to his suspension. ·

In June 1997 Judge Mihm handed down a 21–page Order denying defendants' motion for summary judgment. The order reported that during a meeting with Assistant State's Attorney Umholtz, then Sheriff Drexler stated that Steinborn would be required to take vacation time, receive psychiatric treatment and clearance from the psychiatrist before returning to work. She asserted that she

ordered plaintiff off the case and directed him to do no further investigation. She also asked the Illinois State Department of Criminal Investigations (DCI) to investigate the situation, but it refused to do so.

Judge Mihm said that despite Lickiss' understanding he was not to be involved in further investigation of Steinborn, he delivered a supplemental report regarding it to Umholtz on August 30, 1994. Lickiss reported that Julie Frakes, sister of Steinborn's former girlfriend, Kathy Lund, advised him that Steinborn continued to visit her parents' home after being asked to stop and that they and Lund felt scared and intimidated by Steinborn. Approximately a month later Lickiss reported Mrs. Lund's September 26, 1994 interview with him about Steinborn and her alleged dissatisfaction with Sheriff Drexler's handling of the situation. A week later the *Journal Star* published an article criticizing Drexler's handling of the Steinborn–Lund matter and adding that a similar incident had occurred between Steinborn and his ex-wife. The article quoted Lickiss as one of its sources. Because he continued to investigate the Steinborn–Lund matter and leaked information to the press, Lickiss was allegedly disciplined for insubordination. He also supported the candidate opposing defendant Hodgson's successful race for Sheriff.

Judge Mihm concluded that Lickiss' communications addressed matters of public concern, thus satisfying *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811. From the materials before it, the court concluded that plaintiff produced enough evidence to create an issue of material fact for a jury regarding Drexler's actual motivation in disciplining him. The court stated that suspension with pay pending a rehearing or a pre-suspension hearing should have been accorded Lickiss and that the post-deprivation process was constitutionally insufficient. Defendants' motion for summary judgment was denied, so that plaintiff could proceed to trial with respect to his claim for damages. We agree with this disposition.

■ The only issue before this Court is the district court's denial of the claim of qualified immunity. "Because qualified immunity is immunity from suit, not merely a defense to liability, and effectively is lost if a case erroneously is permitted to go to trial, the denial of qualified immunity is a final appealable order for purposes of 28 U.S.C. § 1291, if based solely on a matter of law." *Khuans v. School Dist. 110*, 123 F.3d 1010, 1012 (7th Cir.1997) (citations omitted).

Defendants failed to provide plaintiff with a pre-suspension hearing, prior notice of suspension, notice of the charges against him, and an opportunity to respond. Therefore his clearly established due process rights were denied. *Muscare v. Quinn*, 520 F.2d 1212 (7th Cir.1975). The balancing test of *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811, reiterated in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708, governs this case.

■ Lickiss was neither a confidential employee nor a policymaker. Unlike the deputy sheriff in *Wilbur v. Mahan*, 3 F.3d 214 (7th Cir.1993), Lickiss was not a policymaker whose enforced unpaid leave did not establish violation of his First Amendment rights. Therefore he was entitled to a presuspension hearing, prior notice of suspension, an opportunity to respond and notice of the charges against him. *Muscare v. Quinn*, 520 F.2d 1212 (7th Cir.1975).

■ Under *Pickering* and *Connick*, it is clear that a governmental employer cannot punish a public employee for engaging in protected expression on matters of public concern under the First Amendment. The First Amendment protection of the employee in commenting upon matters of public concern is balanced against the interest of the government as employer in promoting the efficiency of the public services it performs through its employees. *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35; *Connick*, 461 U.S. at 142, 103 S.Ct. at 1687. Lickiss was entitled to raise questions about the shortcomings of the defendants' official investigation because it is a matter of public concern. *Glass v. Dachel*, 2 F.3d 733, 740 (7th Cir. 1993). Here defendants have been unable to advance any valid reason for their treatment of plaintiff. *Dishnow v. School Dist. of Rib Lake*, 77 F.3d 194 (7th Cir.1996).

Applying the *Pickering* balancing test, it is apparent that Lickiss was not a confidential employee or policymaker, and defendants have been unable to show that plaintiff occupied that position. Unlike confidential employees or policymakers, Lickiss was hired and promoted by a Merit Commission and not under patronage. Under the applicable collective bargaining agreement, cause was required for demotion or adverse employment action, and a grievance process was provided. Unlike then-Chief Deputy Hodgson, plaintiff was not a confidential policymaker and indeed was excluded from meetings where defendants considered the Steinborn matter. As in *O'Brien v. Town of Caledonia*, 748 F.2d 403 (7th Cir.1984), Lickiss could not be disciplined for bringing matters of public concern to the attention of the State's Attorney. As in that case, plaintiff's calling the Steinborn matter to the attention of the State's Attorney was deserving of First Amendment protection. See also *Glass v. Dachel*, 2 F.3d 733 (7th Cir.1993); *Gorman v. Robinson*, 977 F.2d 350 (7th Cir. 1992); *Hanneman v. Breier*, 528 F.2d 750 (7th Cir.1976).

As the State's Attorney told Drexler, Lickiss had the duty to report the Steinborn information to him. Under the facts of record defendants' claim of qualified immunity cannot succeed. Their motion for summary judgment was properly denied. Affirmed.